**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

LAQUEITA K. NOWDEN                                                                                                    PLAINTIFF

v.                                              No. 5:10CV00270 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                                                    DEFENDANT

**OPINION AND ORDER**

On March 12, 2007, Laqueita Nowden applied for supplemental security income pursuant to Title XVI of the Social Security Act. She alleged that she has been disabled and unable to work since January 1, 2007 because of "[d]iabetes, leg swells, breathing problems, fatigue[,] loose grip in [her] hand[, and an abscess] in her breast." (Tr. 125) Her application was initially denied on June 29, 2007, and upon reconsideration on August 29, 2007. At Nowden's request, an administrative law judge held a video hearing on July 10, 2009. Nowden and her mother appeared and testified from Pine Bluff, Arkansas, while the ALJ presided from Little Rock, Arkansas. A vocational expert also testified. In an opinion issued on September 11, 2009, the ALJ concluded that Nowden was not disabled. On July 17, 2010, the Appeals Council denied Nowden's request to review the ALJ's decision.

Subsequently, Nowden commenced this action pursuant to 42 U.S.C. § 405(g) (2006), seeking judicial review of the ALJ's determination. Review by the Court is limited. The Court must determine whether the ALJ's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); 42 U.S.C. § 405(g). In making that determination, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported the

opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) ("Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.") (quotation omitted); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**I.**

The Social Security Administration has promulgated a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (2011). The first step is to determine whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. The second step is to determine based solely on the medical evidence whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities, that is, a "severe" impairment. If not, benefits are denied. The third step is to determine, again based solely on the medical evidence, whether the severe impairments meet or equal a listed impairment that is presumed to be disabling. If so, and if the duration requirement is met, benefits are awarded. If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant evidence. The fourth step is to determine whether the claimant has sufficient residual functional capacity, despite the impairments, to perform the physical and mental demands of past relevant work. If so, benefits are denied. The fifth step is to determine whether the claimant is able to make an adjustment to other work, given the claimant's age, education and work experience. If so, benefits are denied; if not, benefits are awarded. *Id.*

## II.

Nowden was born on May 28, 1984, and has at least a high school education. (Tr. 17) Although she worked as a part-time waitress after the alleged disability onset date, the ALJ concluded that this work did not rise to the level of "substantial gainful activity" and, consequently, found that Nowden had no past relevant work experience. (Tr. 13, 17) Nowden stated in her function report that she cares for her minor children, including cooking, cleaning, and playing with them. (Tr. 143-44) She performs such household functions as "cleaning, ironing, laundry, [and] washing dishes." (Tr. 146) Nowden explained, however, that these activities take her an extra long time because she must stop to rest. She takes her children to the park, the doctor's office, and the store. (Tr. 147) She shops for groceries and household appliances. *Id.* She has no problem handling money. (Tr. 147-48) Nowden engages in social activities on a daily basis and attends church weekly. *Id.* She stated that she can only walk ten to twenty minutes at a time, but that she has no attention problems, can follow instructions, and gets along well with authority figures. (Tr. 149-50) Nowden testified that she can read, write, and do basic arithmetic. (Tr. 23)

Nowden suffers from type 1 diabetes. She must take several insulin injections daily. Nowden's medical records and her admissions reveal that she has a history of failing to comply with her prescribed treatments. (Tr. 13, 15, 17, 34-35) However, she testified that he has been compliant with her medication regimen since April of 2009. (Tr. 31-32) Nevertheless, Nowden's mother testified that Nowden has had to be hospitalized even when properly taking her medications. (Tr. 49-50) Nowden testified that she can only stand for fifteen to twenty minutes before her feet swell, but that she has no problem sitting and can lift a gallon of milk. (Tr. 29) She testified that her feet felt better when she was taking her medications correctly. (Tr. 33) She also testified that he

fingertips are very sore because she must prick them to test her blood sugar levels, but stated that otherwise she has no problems with her hands and can reach for, grab, and hold things. *Id.* Nowden's breast abscess was surgically resolved in June of 2006. (Tr. 444)

Nowden's medical records contain no opinions from treating or examining physicians. (Tr. 14) However, a physician working as a consultant for the state agency, Disability Determination for Social Security Administration, performed a physical residual functional capacity assessment. (Tr. 450-58) The physician concluded that Nowden could occasionally lift twenty pounds, frequently lift ten pounds, and sit, stand or walk about six hours in an eight-hour work day. *Id.* The physician found no postural, manipulative, visual, communicative, or environmental limitations. *Id.* Another state physician reviewed the medical records and confirmed the above findings. (Tr. 461)

Finally, Nowden testified that she suffers from some mental health issues. (Tr. 38) However, the ALJ found no evidence in the medical records that Nowden received any mental health treatment. (Tr. 13)

### III.

At the first step, the ALJ found that Nowden had worked as a part-time waitress from March of 2008 until April of 2009 but concluded that this work did not rise to the level of substantial gainful activity. Consequently, the ALJ found that Nowden had not engaged in any substantial gainful activity since the alleged onset date and, therefore, satisfied the first step. At the second step, the ALJ found that Nowden's diabetes was severe; that is, it caused limitations or restrictions having more than a minimal effect on Nowden's ability to do basic work-related activities.[1]  The

---

[1] Although the ALJ identifies "insulin dependant diabetes mellitus" as Nowden's only severe impairment, the decision mentions Nowden's complaints of leg swelling, breathing problems,

ALJ also noted that Nowden alleged that she suffered from some mental health issues. Citing a lack of medical evidence and Nowden's failure to mention this allegation in her function report, the ALJ concluded that any mental health issues from which Nowden might suffer did not create more than minimal limitations and, therefore, were not severe.

Turning to the third step, the ALJ considered Listing 9.08 (diabetes) but concluded that Nowden's diabetes did not meet the requirements of that particular listing. After considering the entire record and applying the guidelines from Social Security Ruling 96–7p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the ALJ found that Nowden's diabetes could reasonably be expected to produce Nowden's alleged symptoms but that Nowden's statements regarding the "intensity, persistence and limiting effects of these symptoms" were not credible to the extent they were inconsistent with the ALJ's residual functional capacity determination. The ALJ concluded that Nowden

> has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant can occasionally lift no more than 10 pounds at a time with less than 10 pounds frequently. She can stand and/or walk 2 hours of an 8-hour workday. The claimant can sit 6 hours of an 8-hour workday. She can occasionally use her fingers for fine manipulation. She is limited in using her fingers for frequent or constant fingering due to soreness but otherwise can use her hands and fingers to manipulate objects.

At the fourth step, the ALJ found that Nowden had no past relevant work. Finally, at the fifth step, the ALJ found, based on the evidence and the vocational expert's testimony, that jobs which Nowden could perform exist in significant numbers in the national economy. The ALJ stated:

---

fatigue, problems with her grip, and an abscess in her breast, and subsequently states that the "above impairments cause" work-related limitations and restrictions in more than a minimal manner. At the second step, however, the ALJ does not cite any medical evidence to support the conclusion that any of the mentioned conditions, besides diabetes, are "severe." Because Nowden does not challenge the ALJ's findings at the second step, the Court need not resolve the ambiguity created by the decision's change from the singular to the plural.

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.27. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a clerk (679 jobs in the state and 85,000 jobs nationally); as a general office clerk (1,104 jobs in the state and 136,000 jobs nationally); and as a escort driver (1,146 jobs in the state and 170,000 jobs nationally).
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

Therefore, the ALJ concluded that Nowden was not disabled and denied her disability claim.

## IV.

Nowden contends that the ALJ erred as a matter of law and that his decision is not supported by substantial evidence. She contends that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles. Nowden also contends that the ALJ failed to factor all of her medically determinable impairments into the residual functional capacity determination and failed to support that determination with substantial medical evidence.

### A.     **The Vocational Expert's Testimony**

Robinson argues that the vocational expert's testimony is unreliable because it conflicts with the Dictionary of Occupational Titles. *See Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010) (when

expert testimony conflicts with the DOT, the DOT controls unless the DOT classifications are rebutted). At the hearing, the ALJ had the following exchange with the vocational expert:

> [ALJ] All right. I'd like you then to assume an individual the same age and education and I'm not going to consider Ms. Nowden as having any past relevant work so consider this hypothetical individual as having no past relevant work. And further assume that this individual can lift and carry 10 pounds occasionally and less than 10 pounds frequently. Can stand and walk two hours in an eight hour day and sit for six in an eight hour day. Include that the individual would be limited in using her fingers for frequent constant fingering through the soreness but otherwise would be able to use her hands and fingers to manipulate objects but just not the fine fingering such as typing or things of that nature.
>
> [VE] Okay. She's limited to occasional, she can't do frequent or constant, she's limited to occasional?
>
> [ALJ] Occasional fingering but otherwise she could do any limitations with the handling or reaching.
>
> [VE] Okay, okay. Is that the only limitation?
>
> [ALJ] Those are the limitations for hypothetical number one.
>
> [VE] Yes, sir, there would be jobs the person could do. The person could work as a sedentary information clerk, SVP of 2, DOT number 237.367-046, for the United States 85,985, for the state of Arkansas 679. The person could work as a sedentary office clerk, SVP of 2, DOT number 249.587-018, for the United States 136,797, for the state of Arkansas 1,104. Do you want one more?
>
> [ALJ] Please, go ahead.
>
> [VE] The person could work as a sedentary escort driver, SVP of 2, DOT number 919.663-022, for the United States 170,321, and for the state of Arkansas 1,146.[2]

---

[2] Nowden states, "for purposes of clarification," that the DOT codes cited by the vocational expert have different titles than the titles used by the expert. Specifically, "telephone quotation clerk" rather than "information clerk" (DOT 237.367-046), "document preparer, microfilming" rather than "office clerk" (DOT 249.587-018), "escort - vehicle driver" rather than "escort driver" (DOT 919.663-022). The Commissioner points out that the DOT recognizes "information clerk" as an alternative title for DOT number 237.367-046.

(Tr. 45-46) Nowden contends that the DOT's descriptions of the jobs cited by the vocational expert establishes that these positions are not compatible with Nowden's ability. Specifically, Nowden argues that the document preparer and telephone quotation clerk positions do not fit within Nowden's residual functional capacity because the DOT indicates that these jobs both require frequent[3] fingering and handling.[4] Employment & Training Admin., U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* 336, 341, app. C at C-3 (1993) ("SCO").

However, the escort driver position does not require frequent fingering. *SCO* at 93, app. C at C-3. Nowden offers nothing to substantiate her generalized allegation that the vocational expert's testimony about the escort driver position conflicts with the requirements of the DOT. Furthermore, the vocational expert testified that 1,146 escort driver positions are available in Arkansas and that 170,321 such jobs are available in the United States. Based on the vocational expert's testimony, the ALJ could conclude that escort driver positions "exist[ in significant numbers] in the national economy, regardless of whether such work exists in the immediate area in which [Nowden] lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 423(d)(2)(A) (2006) ("For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."); *see also Hall*, 109 F.3d at 1259-60; *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.

---

[3] "Frequently" denotes an activity or condition which exists from one-third to two-thirds of the time. *See SCO* app. C at C-3.

[4] As the Commissioner notes, the ALJ imposed no limitations on Nowden's "handling" ability in her residual functional capacity. Therefore, Nowden's argument that the vocational expert's testimony conflicts with the DOT with respect to "handling" requirements must be rejected.

1988) (500 jobs); *Oxner v. Chater*, 103 F.3d 135, 135 (8th Cir. 1996) (per curiam) (1,000 jobs in area, 5,000 jobs in state, and 200,000 jobs in national economy).

Consequently, regardless of whether the vocational expert's testimony about the document preparer and telephone quotation clerk positions conflicted with the DOT, the ALJ's determination is supported by substantial evidence on the basis of the expert's testimony regarding the escort driver position. Any error with respect to the other two positions is harmless. *See Young v. Apfel*, 221 F.3d 1065, 1070 (8th Cir. 2000) (even if the vocational expert did not rebut the DOT definitions, the ALJ identified other positions which the claimant could perform).

**B.    The ALJ's Residual Functional Capacity Determination**

Nowden also contends that the ALJ failed to include one of her important limitations in the residual functional capacity determination. Specifically, Nowden argues that, "[i]n light of the uncontrolled nature of her insulin-dependent diabetes mellitus," the residual functional capacity determination should have included her need "to take unscheduled breaks to, *inter alia*, check her blood-sugar and administer insulin injections."

The problem with Nowden's argument is that her need to take *unscheduled* breaks turns on her need to respond to her uncontrolled diabetes.[5] She testified that her blood sugar levels are "very controlled now[.]" (Tr. 33) Moreover, the ALJ found that Nowden's problems related to her diabetes, such as instances of diabetic ketoacidosis, were due to her failure to comply with her prescribed medication regimen. (Tr. 13, 17) In the context of the residual functional capacity

---

[5] Although, in her brief, Nowden mentions that she must take insulin injections in the morning, in the evening, and with each meal, Nowden does not argue that the ALJ erred by failing to include her need to take breaks to perform *scheduled* insulin injections with her meals. In fact, the vocational expert testified that the need to have access to carbohydrates as well as to regularly perform blood tests and insulin injections would not interfere with Nowden's ability to perform any of the jobs identified as long as the blood sugar levels are controlled. (Tr. 46, 48)

determination, "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)).

Nowden also attacks the ALJ's residual functional capacity determination on the grounds that it was not supported by medical evidence derived from a treating or examining physician. *See Mathis v. Astrue*, No. 08-3027, 2009 WL 2496684, at *2 (W.D. Ark. Aug. 13, 2009) ("Of particular concern to the undersigned is the fact that the record does not contain an RFC assessment from any of plaintiff's treating physicians.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)). In certain circumstances, the Eighth Circuit has held that an ALJ's reliance on a mere consulting physician's opinion is not substantial evidence. *See, e.g.*, *Laurer v. Apfel*, 245 F.3d 700 (8th Cir. 2001); *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988); *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). However, those decisions "involve situations where the consulting physician's opinion contradicts that of the treating physician." *Richardson v. Astrue*, No. 3:10CV00147, 2011 WL 4479215, at *3 (E.D. Ark. Sept. 28, 2011). There is no conflicting evidence from a treating or examining physician in the instant case. Furthermore, the residual functional capacity determination is based upon *all* of the evidence—although some medical evidence must support the determination. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). Therefore, even without a treating physician's opinion, an ALJ's residual functional capacity determination may be supported by substantial evidence where it is based upon the medical records, observations of reviewing physicians, the claimant's own testimony, and other evidence in the record. *Id.*; *Richardson*, 2011 WL 4479215, at *3; *see also Sultan*, 368 F.3d at 863 (The ALJ has a duty to develop the record by seeking the opinion of a treating or examining physician "only if the available evidence does not

provide an adequate basis for determining the merits of the disability claim." ) (citing 20 C.F.R. §§ 416.912(e), 416.919a(b)); *Hight v. Shalala*, 986 F.2d 1242, 1244 n.1 (8th Cir. 1993) ("We have never held that the opinions of consulting physicians cannot constitute substantial evidence; indeed, such a holding would make the provisions allowing the Secretary to require claimants to submit to consultative exams, 20 C.F.R. §§ 404.1517-.1518, meaningless."). Here, the ALJ relied upon the opinions of reviewing physicians; Nowden's testimony about her condition, abilities, and past work experience as a waitress and at home; and Nowden's medical records. (Tr. 14-17) Thus, there is substantial evidence in the record to support the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the Commissioner is affirmed.

IT IS SO ORDERED this 6th day of February, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE